UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BEJON MANECKSHANA,<br><br>    Plaintiff,<br><br>    v.<br><br>BAYSTATE HEALTH INC.,<br><br>    Defendant. | Civil Action No. 24-30097-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 6)

April 16, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

This case arises from a November 2022 decision by non-party Bay State Medical Center ("BMC") to report Dr. Bejon Maneckshana ("Plaintiff") to the National Practitioner Data Bank ("NPDB") as an immediate threat to the public. In response to BMC's report, Plaintiff initiated this civil action, asserting Baystate Health Inc. ("Defendant") violated the Health Care Quality Improvement Act ("HCQIA") (Count I) and defamed him (Count II) by reporting him to the NPDB. Defendant now moves to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), arguing as follows: (1) Defendant is not the proper entity to sue;[1] (2) the HCQIA does not provide for a private right of action in federal court; and (3) Plaintiff

---

[1] The court does not address this argument because, for purposes of this motion, it must accept as true Plaintiff's allegation that this Defendant was his employer. However, failure to properly name one's employer can result in summary judgment at the appropriate time. *See Baez v. Baymark Detoxification Servs., Inc.,* 123 F.4th 62, 66 (1st Cir. 2024).

fails to allege a plausible defamation claim under Massachusetts law.

For the following reasons, the court grants Defendant's motion as to both counts, rendering this action dismissed.

## II. BACKGROUND[2]

Plaintiff is a transplant surgeon licensed to practice medicine in the Commonwealth of Massachusetts since 2003. He was appointed to BMC's staff in 2020 with privileges to perform kidney transplant surgeries at the facility and practiced in this role for two years without issue.

In the fall of 2022, Plaintiff was summoned to a meeting with Doctors Nicolas Jabbour and Kenneth McPartland. There, Jabbour and McPartland informed Plaintiff that an outside surgeon was being brought in to observe his next procedure because a prior transplant performed by Plaintiff left a patient with a "nicked" kidney artery. Jabbour and McPartland also presented Plaintiff with a Focused Professional Practice Evaluation ("FPPE").

Shortly after this meeting, Plaintiff's upcoming transplant surgeries were taken away from him and assigned to other doctors. Plaintiff was also accused of inappropriate communications with a patient at around the same time. He was subsequently summoned to a second meeting with Jabbour and Doctor Doug Salvador. At this meeting, the parties discussed the death of a patient during a procedure performed by Plaintiff. Jabbour and Salvador subsequently requested Plaintiff enter a voluntary agreement to no longer exercise his clinical privileges at BMC. If he did not, they informed Plaintiff his privileges would be revoked. Plaintiff entered into the voluntary agreement. BMC subsequently reported Plaintiff to the NPDB on November 4, 2022, explaining he was a danger to the public.

Later that November, BMC officials told Plaintiff nine of his prior surgeries were being sent

---

[2] Unless otherwise noted, all factual allegations are drawn from Plaintiff's operative complaint. (Dkt. No. 1.)

to an external surgical consultant for "peer review." BMC officials received the results of this review

in December of 2022. They then informed Plaintiff it confirmed their concerns with his surgical ability.

Of the nine cases reviewed by the consultant, six were deemed to meet the proper standard of care,

but three were not.

In the spring of 2023, Plaintiff applied for a job in California. He was initially offered the

position, but it was withdrawn because the hospital would not grant admittance privileges due to the

NPDB report. Two more informal job offers also fell through because of the report. Plaintiff thus

decided to challenge the report through the NPDB's dispute resolution process. After a period of

back and forth between the NPDB, BMC, and Plaintiff, his dispute was denied. According to Plaintiff,

this denial functionally prevents him from obtaining work as a transplant surgeon nationwide.

### III.    LEGAL STANDARD

As this matter is before the court on Defendant's motion to dismiss pursuant to Rule 12(b)(6),

the court applies the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft*

*v. Iqbal*, 556 U.S. 662 (2009). Therefore, the complaint must allege "sufficient factual matter, accepted

as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,*

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.

When evaluating whether dismissal is appropriate under Rule 12(b)(6), the court must credit

well-pleaded factual allegations as true and draw all reasonable inferences from those facts in the non-

moving party's favor. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013).

"Well-pleaded facts must be non-conclusory and non-speculative." *Barchock v. CVS Health Corp.,* 886

F.3d 43, 48 (1st Cir. 2018) (internal quotation omitted). For a claim to proceed, the complaint must

allege enough facts to plausibly establish each material element of the claim and "raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (citing *Twombly*, 550 U.S. at 555). Generally, the court's review is limited to allegations in the complaint, but it "may [also] consider implications from documents attached to or fairly incorporated into the complaint," *Barchock*, 886 F.3d at 48, as well as "matters of public record, and other matters susceptible to judicial notice," *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020).

## IV.    DISCUSSION

### A.    Count I (HCQIA)

As to Count I, alleging Defendant failed to adhere to the procedural requirements of the HCQIA, Plaintiff does not state a claim as a matter of law. "[T]he HCQIA does not create a private cause of action." *Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 45 n. 18 (1st Cir. 2002) (alteration added); *see also Garib-Bazain v. Hosp. Espanol Auxilio Mutuo, Inc.*, 773 F. Supp. 2d 248, 254 (D.P.R. 2011). This court agrees with the conclusion of the *Garib-Bazain* Court: "it is well-settled that the HCQIA does not create an explicit or implicit private cause of action for physicians that are subject to a professional peer review." *Garib-Bazain*, 773 F. Supp. 2d at 254; *see also Singh*, 308 F.3d at 45 n. 18 (citing with approval *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1148 (8th Cir.1998), *Hancock v. Blue Cross–Blue Shield of Kan., Inc.*, 21 F.3d 373, 374–75 (10th Cir.1994), and *Bok v. Mut. Assurance, Inc.*, 119 F.3d 927, 928–29 (11th Cir.1997), all holding the HCQIA does not create a private cause of action); *Daigle v. Stulc*, 694 F. Supp. 2d 30, 35 (D. Me. 2010) (holding the same). In the face of this clear precedent and the general rule against implying private causes of action, the court declines any invitation to recognize such a right, as "[a] private right of action, like substantive federal law itself, must be created by Congress." *Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 84 (1st Cir. 2004) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)); *see also Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017)

("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate."). Accordingly, Count I is dismissed.

### B.    Count II (Defamation)

Count II, alleging BMC's report to the NPDB was defamatory, also fails to state claim under Rule 12(b)(6).

First, Plaintiff's defamation claim is barred by the Massachusetts peer review privilege.[3] Under Mass. Gen. Law ch. 111, § 204(a), "the proceedings, reports and records of a medical peer review committee . . . shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding[.]" *Id.* (alterations added). Section 205(b) of the same chapter further clarifies that any information "necessary to comply with risk management and quality assurance programs" including information "collected and compiled" to provide "credentialing information to health care entities shall be deemed to be proceedings, reports or records of a medical peer review committee for purposes of section two hundred and four of this chapter." *Id.* These two provisions, when read together, "provide weighty protection to a medical peer review committee's work product and materials," as "[t]hey express the Legislature's considered judgment that the quality of health care is best promoted by favoring candor in the medical peer review process." *Vranos v. Franklin Med. Ctr.*, 862 N.E.2d 11, 18 (Mass. 2007) (alteration added).

As relevant here, any report or statement to the NPDB was covered by the definition set forth in Section 205(b). Pursuant to Mass. Gen. Law ch. 111, § 53B, BMC had to report Plaintiff's

---

[3] Plaintiff's complaint cites both federal question and diversity of citizenship as the basis for this court's jurisdiction. However, because the HCQIA does not provide a private cause of action, there is no basis for federal question jurisdiction. Nevertheless, the court does find it has diversity jurisdiction over this matter, as Plaintiff is a citizen of Connecticut and Defendant is a citizen of Massachusetts. Relatedly, because the court is "free to honor the reasonable understanding of the parties as to choice of law," and both sides have applied Massachusetts law in their briefs, the court will also apply Massachusetts law in analyzing the defamation claim. *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012); *see also Motorists Com. Mut. Ins. Co. v. Hartwell*, 53 F.4th 730, 734 (1st Cir. 2022).

acceptance of the revocation of his privileges to the Commonwealth to comply with its risk management and quality assurance obligations. *See* 243 C.M.R. 2.14 (5) (mandating reporting of disciplinary actions under Section 53B); 243 C.M.R. § 3.07(1) (requiring implementation of mechanisms for reporting competency concerns pursuant to Mass. Gen. Law ch. 111, § 203(a)); 243 C.M.R. 1.01 (2)(c) (defining disciplinary action for purposes of reporting requirements); 243 C.M.R. 3.02 (adopting the definition of disciplinary activity set forth in 243 C.M.R. 1.01 (2)(c)); *cf.* 1990 Mass. Op. Atty. Gen. No. 5, 1990 WL 508744 (interpreting a voluntary or involuntary leave of absence as a reportable event under Massachusetts law). Pursuant to 42 U.S.C. § 11135(a)(1), hospitals must always query the NPDB before hiring a physician, rendering the report information collected or compiled for credentialing purposes. *See Breda v. United States*, No. CV 20-3308 (RDM), 2023 WL 2707776, at \*1 (D.D.C. Mar. 29, 2023) (citing *Leal v. Sec'y of U.S. Dep't of Health and Hum. Servs.*, 620 F.3d 1280, 1283 (11th Cir. 2010)). Furthermore, the report was necessary to the work product of medical peer review committees, as the complaint itself alleges Plaintiff's surgeries were peer reviewed following BMC's report to the NPDB. *See Carr v. Howard,* 689 N.E.2d 1304, 1310-11 (Mass. 1998). Therefore, the report cannot form the basis for a defamation claim as a matter of Massachusetts law. *See, e.g., Vranos v. Skinner,* 930 N.E.2d 156, 168 (Mass. App. Ct. 2010).

Additionally, while not cited by any party, 42 U.S.C. § 11137(c) provides, "[n]o person or entity . . . shall be held liable in any civil action with respect to any report made under this subchapter [to the NPDB] . . . without knowledge of the falsity of the information contained in the report." *Id.* (alteration added); *see also Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1334 (10th Cir. 1996) ("The Health Care Quality Improvement Act confers immunity on any person who makes a report to the National Practitioner Data Bank without knowledge of the falsity of the information contained in the report (internal quotation marks omitted)); *Hooda v. W.C.A. Serv. Corp.,* No. 11-CV-504-A, 2013 WL 2161821, at \*5 (W.D.N.Y. May 17, 2013) (explaining Section 11137(c) applies when the alleged

injury was caused by a report to the NPDB). "Section 11137(c) immunity is complete: it provides immunity from both damages and suits for injunctive relief." *Murphy v. Goss*, 103 F. Supp.3d 1234, 1239 (D. Or. 2015), *aff'd*, 693 F. App'x 636 (9th Cir. 2017). In determining falsity, "a general consensus has emerged that 'courts do not evaluate whether the underlying merits of the reported action were properly determined' but instead 'evaluate whether the report itself accurately reflected the action taken.'" *Robinson v. E. Carolina Univ.*, 329 F. Supp. 3d 156, 178 (E.D.N.C. 2018) (quoting *Murphy*, 103 F. Supp.3d at 1239, and collecting cases from across the country holding the same); *see also Murphy v. Goss,* 693 F. App'x 636, 637 (9th Cir. 2017) ("The district court did not err in concluding that Defendants are immune from liability under 42 U.S.C. § 11137(c). The record contains no evidence that Defendants knew that any information Goss submitted to the Data Bank in relation to Dr. Murphy's discipline was false."). This court agrees with the well-reasoned analysis in *Robinson* and *Murphy.* Therefore, Section 11137(c) immunity applies unless the complaint raises a plausible inference that the healthcare entity knowingly transmitted a report to the NPDB that did not accurately reflect the nature of the disciplinary action taken against the physician.

Here, Plaintiff has not alleged facts sufficient to create a plausible inference BMC officials knew they were transmitting a report which falsely reflected the action taken against Plaintiff. Rather, the complaint affirmatively alleges Plaintiff surrendered his privileges under the threat of suspension pending an investigation, an action which must be reported to the NPDB as a matter of federal law.[4] *See* 42 U.S.C. § 11133(a)(1)(B); *see also Doe v. Leavitt,* 552 F.3d 75, 81-86 (1st Cir. 2009) (upholding HHS's interpretation of the HCQIA as requiring hospitals to report whenever a physician resigns while under investigation); *Doe v. Rogers,* 139 F. Supp. 3d 120, 145 (D.D.C. 2015) ("The Health Care

---

[4] Plaintiff disputes this action was justified. But he does not allege it never occurred, nor does he allege any other basis for his defamation claim than the NPDB report. (Dkt. No. 1, ¶¶ 15, 21, 49-51.)

Quality Improvement Act and the regulations establishing the National Practitioner Data Bank state that a health care entity must report the acceptance of a physician's 'surrender' of clinical privileges while the physician is the subject of an investigation relating to possible incompetence or improper professional conduct."); *Breda v. United States*, No. CV 20-3308 (RDM), 2023 WL 2707776, at *8-10 (D.D.C. Mar. 29, 2023); *Brook v. Rogers*, 656 F. Supp. 3d 78, 87 (D.D.C. 2023), *aff'd sub nom. Doe v. Rodgers*, No. 20-5297, 2023 WL 1978697 (D.C. Cir. Feb. 14, 2023), *cert. denied*, 144 S. Ct. 328 (2023); *Long v. Parry*, No. 2:12-CV-81, 2016 WL 814861, at *19 (D. Vt. Feb. 29, 2016), *aff'd*, 679 F. App'x 60 (2d Cir. 2017). Count II is therefore barred by Section 11137(c)'s immunity provision.

Accordingly, for all of these reasons, Count II is dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. (Dkt. No. 6.) This case may now be closed.

It is So Ordered.

  /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge